Thank you, Your Honors, and may it please the Court. This appeal concerns the scope and meaning of the agency created by Section 1E of the Federal Trademark Act, 15 U.S.C. Section 1051. For more than 118 years, federal trademark legislation has consistently provided that a nonresident of the United States who seeks registration of a claim of right to use a trademark in the United States must have an agent located somewhere within the United States upon whom may be served, quote, process in proceedings affecting the mark. The historical record is unusually clear as to the purpose of this requirement. It is stated in the document that the government cites and that we cite, it is to make ensure that a nonresident of the United States is constructively present in the United States for purposes of service of process. The design of Section 1E is identical in principle to the statute the Supreme Court recently construed and applied in Mallory v. Norfolk Southern, a statute that also long antedates international shipping and implements the traditional position that intra-jurisdiction service of process, service within a jurisdiction on an agent for service of process, is a sufficient basis to subject a litigant to the power of the court. That brings us to the process at issue in this case, which is reproduced in pages 202 to 205 of the Joint Appendix. This is a subpoena ad testificandum. The subpoena was personally hand-delivered on the statutory agent for service of process of the respondent. The subpoena commands the respondent to appear and give testimony in exactly the same way as did the subpoena served in the Rosenruys case on the Portuguese nonresident defendant in that case. In terms of what the subpoena commands and what is required of the respondent in this case, it is identical to what was at issue in the Rosenruys case and was upheld in the Rosenruys case. Does it make any difference, does it make any difference that this agent was a default agent as opposed to having been appointed by the corporation? Under Supreme Court precedent and this court's precedents in the Knott versus Furman case, it makes no difference whether the agent is statutory default agent or is an agent appointed. I would point out that for the first 97 years, between 1905 and 2002, nonresidents did not have the option to have the director of the USPTO serve as their free statutory agent for service of process. You actually had to appoint someone specifically. An applicant like these applicants might have appointed someone in Honolulu or in San Francisco or someplace where it is more convenient to them to appear and show up in response to process. But since they chose to save the two dollars and allow the director to serve as their statutory agent for service of process, then they submitted to the judicial power of the United States in the location where the director is located, which is where the subpoena was served in this. Well, following up on that, it seems to me there are two ways we could decide this case. One is to interpret the statute. The phrase interpreting resides or being within. The other way we could decide it is the TTAP rules don't provide for this procedure. Can you address that? Yes, I'm delighted to address that. The design of the statute very clearly reposes in the independent judiciary, not in a branch that's subject to political pressure, whether process is going to be issued. And the statute does not say process that an executive branch agency deigns to allow or permits. It provides in a contested case such as between two litigants at arm's length that a district court has authority to subpoena a litigant who is a party to a contested case exactly as in the Rosenkrantz case. And the existence of an alternative way of trying to get discovery such as serving a mere notice and taking what is available by service of a mere notice or seeking issuance of a letter addressed to a foreign judicial official and trying to compel testimony outside the United States, which is possible. The USPTO's own manual of board procedure says that seeking issuance of a letter under 28 U.S.C. 1781 is another way that you can get discovery. But no principle of statutory construction permits the plain language of a statute that confers authority on a United States federal district court is impliedly limited by what an agency chooses to make available based on mere notice. What about, I mean, the principle that you read these provisions in context? And it does seem really strange. Section 23 specifically says that the director establishes the rules for taking affidavits and depositions in these actions. And then if you read 24 coming right after that, they're saying they were originally even part of the same provision. Why would you read that to say, oh, but also U.S. district courts can figure out what depositions should be taken? Why wouldn't you naturally read that to say, and then district courts can issue process to effectuate those things from the prior provision? Well, there's a couple of points. First of all, contrary to what the government has said, 35 U.S.C. Section 23 is not the source of the rules that they're relying on in this case. That's an incorrect statement in their brief. The rules are promulgated under 15 U.S.A. Section 1123, which expressly subordinates these rules to existing law, including Rosenruse, including 35 U.S.C. Section 24. So there is a basic factual error in the government's reliance on that information. I hear what you are saying, I think, but I'm not sure it actually sort of addresses the point I'm making, which is that if you look at these two provisions in context, it looks like Section 24 is limited to district courts, and we said this in Rosenruse's name, playing this kind of supporting role where the function is limited to process in support of PTO-approved discovery. Well, the PTO-approved is the gloss that the government is trying to read into the statutory phrase for use in. I'm not there, I'm just looking at, I understand, I guess I'm saying what if you look at 24 together with 23? Why isn't this the more natural inference? Passing over the Section 23 is not the fact that an administrative agency promulgates rules that permit a party before them to take certain actions, such as serving interrogatory, serving requests for admissions, doing other proffers of evidence. That is completely appropriate, and it defines what rights and the statute authorizing issuance of letters rogatory. That is in no way in derogation of the district court's power to issue a subpoena for a domestic deposition of a party, which is what was at issue in Rosenruse. The Rule 37 CFR 2.120 C2 specifically authorizes deposition discovery upon oral examination in the United States, and that is what the petitioner seeks in this case. Deposition discovery in the United States, and the government agrees with us on the being within point that this non-United States resident is subject to subpoena power, but the government wants, you know, the government's argument is that the way that those agency rules take precedence over the federal statute is through the statutory language for use in. That's the hook that they rely on, and that is not an argument that was made or supported in the district court by the respondent at all. This is a new argument raised for the first time by an amicus to say that the process, if you look at the subpoena itself, there are 11 topics on page 205 of the record, and the assertion is made for the first time that the testimony sought as to those topics should be held by this court to be not, quote, for use in the underlying opposition proceeding, and that is just an insupportable position. There's a very good reason that the respondent has never made that argument. The plain meaning of for use in is looking to the purpose of the party seeking the discovery. Why is this testimony being sought? It's being sought to advance the interests of the plaintiff in this pending opposition case, which is hotly contested. The defendant doesn't want to show up for deposition because it thinks it can get a tactical advantage by having questions in advance and avoiding any oral cross-examination or confrontation by opposing counsel. If I thought I could get away with that, I'd do the same thing, but the statute gives the federal judiciary power to serve process in general, not process that the agency will deign to authorize if you beg for it and they give it. It's process and proceedings affecting the mark, and that's what this is. This subpoena unquestionably is process and proceedings affecting the mark within the meaning of section 1e, and I might add that the government's argument was essentially rejected by the Ninth Circuit in the San Antonio winery case that was decided last year. They took the same type of position that you should take a narrow view of the scope of the agency of 1e and that the agency of 1e does not apply to originating process in an infringement suit. The government there once again took the side of the non-resident person and argued that because we didn't authorize this process, it doesn't matter, and the Ninth Circuit disagreed with that and held that the 1e agency was good for originating service of process of summons in an infringement suit. So there's another recent example of one of your sister circuit court of appeals essentially agreeing with our position that 35 U.S.C. is an independent source of judicial authority to issue process on the request of a party to the case, and it is not ordinate the preferences of the agency, and I would point out, Judge Harris, that not a single one of the cases cited by the government in support of it, for let, she, he, none of them, none of them say that the phrase for use in is a limit of the type that that they're that they're arguing for in this case. This is a novel argument that no court has ever adopted. It's contrary to the plain meaning of the statute, and it's contrary to the way this court construed that language in the analogous context of 1782 and N. Ray Newbrook shipping. So we believe that the process at issue in this case is not a piece of paper and no more. It was not something that the district court had no power to issue. It's not something that wasn't actually served. It is real process, and what should happen in this case, there should be a romance of the respondent can answer it under and in accordance with the federal rules of civil procedure. Isn't there some comedy argument that can be made that we don't want our American corporations subjected to the same kind of process that we're trying to subject foreign corporations to? Is that wash or not? I respectfully submit, Judge Floyd, that that is not a consideration that 35 U. S. C. Section 24 properly permits a district judge to refuse to issue a subpoena. The respondent in such a case can come in and move for protective order and try to make these kind of institutional arguments that there's gonna be some parade of horribles, which, by the way, since 2000 and seven have not materialized. So no, I think that the debate between the majority and the dissent Iran is referring to one of Judge Wilkinson's arguments and his dissent in Rosen raised Mallory has largely resolved. I think a large what had separated the majority in the Senate. In that case, Mallory reaffirms that minimum contacts is not the only basis of personal jurisdiction. This is an old statute dates back long before international shoe, and that I don't think that it would be appropriate for a district judge to say, Well, because I think that it's good foreign policy that I'm gonna disadvantage a plaintiff in the case in front of me because I want to give the defendant an edge because that that's a policy preference that the executive branch may have, and they may well have that. But it shouldn't sacrifice a plaintiff's rights for that kind of consideration. I'll reserve the rest of my time for rebuttal. Thank you, Mr. Bush a good morning. May it please the court. My name is Ashley Boucher, and I represent the appellate build exact off. We're limited. Your honors, there is no justification for overturning the district court's order washing exact where subpoena as you've heard. This is no ordinary subpoena. If this subpoena were enforced, it would contradict the trademark trial and appeal board's longstanding rules governing the depositions of foreign applicants in contested cases before the United States Patent and Trademark Office. That's precisely why we see the United States here today. I would like to make two points to your honors. First, the district court was within its authority when it quashes subpoena under 35 USC Section 24. And second, the exact where subpoena is inconsistent with the trademark trial and appeal board rules. Turning to my first point, the district court was within its authority to quash exact where subpoena for rule 30 B6 deposition of build exact. In making its determination, the district court considered substantial briefing, reviewed nearly 25 exhibits, and entertained oral arguments. As the record shows, build exact is an Australian company with its principal place of business in Melbourne, Australia. Other than filing a trademark application with the United States Patent Trademark Office, it has no officers or facilities in the Eastern District of Virginia. It has no officers, agents, or employees there either. These facts are undisputed. Taking 35 USC Section 24 as a whole, the district court properly considered limitations under Rule 45. Under Rule 45 D3A, a district court must quash subpoena that requires compliance beyond the geographical limitations of Rule 45 C or subjects a person to undue burden. Under Rule 45 C, a district court, a subpoena can only command the appearance of a person or force them to attend a deposition within 100 miles of where that person resides, is employed, or regularly transacts business in person, or in a state where a party resides, is employed, or regularly transacts business. There is no question that build exact does not reside within the Eastern District of Virginia, even exact where it has acknowledged that. Build exact also does not regularly transact business or have any officers, employees within the Eastern District or the Commonwealth of Virginia. The district court was correct to consider this evidence in its ruling. Counsel, just so I'm clear, so are you, the district court as I understood it held that your client is not within the district. Correct. For purposes of the statute. Are you defending that? Is that your argument? I am defending, I'm going to get to that point in just a moment. That's what the district court held. I wonder if we can start there. Yeah, sure, sure, sure, sure. So, the district court did consider exact where his argument that build exact by virtue of the appointment of the director of the UPTO as its statutory agent was within the Eastern District of Virginia. However, the district court rejected that and stated that it required something more. As Judge Trango noted, and I quote, the phrase resides or being within is not satisfied by the default appointment of the director. Why not? Because in order for the subpoena to be, because of Rule 45, Your Honor. Even, Your Honor, even if we put Rule 45 to one side and we're just looking at the statute, you just explained why I understand that that's what the district court held, but I was, I didn't really see much of a defense of that in your brief. So, I want to give you a chance to explain to me why is that right? That they are not within this district. They are not within this district. Because they're not, they're not there. They have no physical presence. They have an agent for service of process. Why isn't that enough? They can be served there. Correct, Your Honor. They can be served, but it doesn't go to the enforceability of the subpoena. It just goes to whether or not the subpoena itself can be served. Does it, Judge Floyd asked your colleague about this at the beginning. It seemed like there was a lot of discussion before the district court about the fact that your client didn't affirmatively designate an agent and instead it was a statutory default. Is that a distinction you're defending on appeal? No, Your Honor. I think the director of the USPO is the statutory agent. I'm not sure that it makes a fundamental difference here. So, exact where, in its argument, that Build Exact is within the district, exact where it analogizes the statutory contract construct of 35 Section 24 to state law statutes such as a not, Schellenberger, and Mallory. But, Your Honor, those involve state law statutes that don't incorporate the federal rules of civil procedure. Exact where also attempts to rely on Rosen or Wiest and believes that the subpoena here is indistinguishable, the one issued in that case. We disagree. And the Rosen or Wiest, the subpoena there was presumed valid. Here it is not. The subpoena in that case was for a testimony deposition. This is for a discovery deposition. And more so as the district court recognized that the holding in Rosen or Wiest was very limited. It was the definition of witness in 35 USC Section 24. I hear you on that. There may not technically be a holding on this point in Rosen or Wiest, but you do have the court saying, though, that it disagrees with the dissent and that if it were deciding the question, it would say that the company there was within the district by virtue of its agent for process. So, I mean, at a minimum, you're kind of swimming upstream from where we were in Rosen or Wiest, right? A little bit, Your Honor. A little bit. I see Rosen or Wiest as fundamentally distinguishable, more so because the holding was so limited. Turning to my second point, ExacWare's subpoena is inconsistent with the Trademark Trial and Appeal Board rules. As the government has pointed out, ExacWare is seeking discovery that the Trademark Trial and Appeal Board does not permit. Under the Trademark Trial and Appeal Board rules, foreign applicants are to be opposed by written question unless the Trademark Trial and Appeal Board orders upon a showing of good cause or the parties so stipulate. Here, ExacWare has not moved the board for an order to show good cause and clearly the specifically held that it will not command a natural person residing in a foreign country to appear in the United States for his or her deposition. ExacWare tends to rely on the opinion in Freelette v. Kimberlin, which is a Third Circuit case. But, Your Honors, that supports your view, Judge Harris, that Section 23 and 24 work together and Section 24 is to provide a supporting role to the U.S. PTO. It is not to broaden the scope of discovery before the PTO, but it is just to provide a supporting role. That is also supported in the Eastern District of Pennsylvania case, Pure Bearing v. Roller Bearing, and that's 2012 Westlaw 662-8038. In that case, the Eastern District of Pennsylvania held that a subpoena under Section 24 must two conditions. First, it may be a contested case before the Patent and Trademark Office, and second, that the discovery must be authorized by the United States Patent and Trademark Office. Well, then, just what is the interaction between the TTAP rules and Section 24? It's not clear what that is to me. Your Honor, Judge Floyd, it's to provide a supporting role. There are some instances where the Trademark Trial and Appeal Board has no authority to issue subpoenas or command people to appear, and I think Congress realized that, and so it enacted 35 U.S.C. Section 24 to allow district courts to aid the USPTO. So, I think it was a mechanism to aid. Well, then that goes back to your adversaries. I think he used the word beg. Have to go before the TTAP and beg for permission to take a deposition. Is that correct? Well, Judge Floyd, I don't think you necessarily have to beg. I think if a party can show good cause why they need the deposition, there have been cases where the Trademark Trial and Appeal Board has ordered, has found that there has been good cause shown. Have they done that? EXACT WHERE has not done that in this case. As the district court noted, EXACT WHERE can obtain the discovery it seeks. It just must follow the rules and the mechanisms that the TTAB provides for doing so. Your Honors, this court may affirm the district court's ruling for any reason, even if this court were to agree that the Director of the USPTO, as a statutory agent, places Buildings Act within the Eastern District of Virginia, the district court's quashing of the subpoena was still proper. For these reasons, we ask this court to affirm. Let me make sure that, in addition, if, for example, Buildings Act did have someone employed in the Eastern District of Virginia, you're saying that they still could not subpoena someone for a deposition? No, Your Honor. If Buildings Act did have someone there, and it was within 100 miles of where they reside, employed or regularly transact business, that would put them within the scope of Rule 45. At 45, what about your rules? PTO rules. Not your rules, but the PTO rules that say that, you know, we decide when live testimony is going to be. Well, for a discovery deposition, they're allowed for people that are here in the United States. Because Buildings Act has no employees, agents or officers here, they're all foreign. They're all foreign. Correct. That only implies that they have no one here. Correct. So you're saying it doesn't restrict the federal courts at all under Rule 45? Well, I think 35 years, I think the district courts, the subpoena power of district courts are always limited by Rule 45. But the trademark trial and appeal board can, I guess what I'm thinking about is when most people take depositions in opposition cases, in oppositions, just as they do in federal court cases, usually you notice the deposition where you issue the subpoena in compliance with Rule 45. The deposition here was supposed to be a video deposition, is that right? No, exactly where asked. There was a lot of correspondence back and forth over the issue of the deposition at one point, exactly where it said we will do a video conference deposition. And we declined because it's not compliance, it's not consistent with the trademark trial and appeal board rules. Okay. Are there any other questions? Thank you, Ms. Beaucheney. Thank you, Your Honor. Ms. Tenney. May it please the court, Daniel Tenney for the United States. The fundamental principle of 35 U.S.C. 24 is to support the proceedings before the USPTO, in this case, the trademark trial and appeal board. And as a number of circuits have recognized, including the Federal Circuit, which now has exclusive jurisdiction over patent cases in Abbott Laboratories, and the Third Circuit in the Follett decision and others, the way that works is that if you are seeking discovery to which you would be entitled under the rules that the director has been statutorily told to promulgate, but you don't have the coercive power necessary to do so, then that is the role that these provisions play. And typically, that will be for third-party witnesses, for parties to the proceedings, the trademark trial and appeal board does have authority to sanction parties for failing to comply with discovery requests. So the ordinary operation of this rule would be if there's a third-party witness. And the point is, the problem that caused the statute to be enacted was that third-party witnesses were refusing to come. They had to be paid off in order to come to be willing to give testimony, and Congress wanted to put an end to that. In that respect, this works like Will 45 subpoenas generally. If you have a tribunal that's hearing the underlying dispute, a district court, say, in a different district in the United States, and then you issue a subpoena for a witness that's somewhere else, you can't use the coercive power of the district where the case is because they don't have personal jurisdiction over the witness, so you would issue the subpoena somewhere else. But everyone presumes that the district court where the subpoena is issued wouldn't decide for itself, you know, do I think this is appropriate in the context of the other proceeding, would follow the rules that have been laid out in the other proceedings. I don't actually understand exactly what appellant's position is on what the district court is or is not supposed to do. The natural thing that you would expect would be that it would follow the rules of the underlying proceeding. It says, well, if you want to use it for the USPTO proceedings, that's the only statutory inquiry. I don't know if that means if you're out of time, if it's too early, if it's too late, if the board has specifically held that this witness shall not testify, if you can go to district court and get a do-over, if the board says you get 10 depositions and you want an 11th deposition, you can go to district court and get around that. None of that makes any sense. There's no reason to read the USPTO. There was sort of a building circuit consensus before the federal circuit was created, and then the federal circuit joined that consensus in Abbott Laboratories to say that the way this statute is best read is that it supports the USPTO, and so it will be the sorts of testimony that the USPTO would allow in its own proceeding. And just applying that rule to this case, which would entirely dispose of this appeal, ordinarily if you have an entirely foreign party with no officers or agents in the United States, you can get by default a deposition on written questions. If you want an oral deposition instead, you can go to the Trademark Trial and Appeal Board and claim that there's good cause for that. They didn't pursue that course in this case, and I think this really highlights the way this is sort of an end-run around the proceedings of the proceeding that they're actually engaged in. If they went to the Trademark Trial and Appeal Board, they have lots of arguments for why it doesn't make sense to limit them to a written deposition in this case. If they think those are meritorious, they can take them to the Trademark Trial and Appeal Board. The board can issue a ruling and decide whether there's good cause to give them a video deposition in this case, and then they should abide by that ruling. And that's really all we're asking for in this case. We've also addressed the other issue. We don't think the court needs to reach it here, and frankly, we don't think it will have a very significant effect in cases going forward, because if parties are limited to the testimony that the board allows, they could just go through the board. The board will have, as I mentioned, authority to sanction parties who don't comply with discovery. So this will really be limited to third-party witnesses, which might sometimes have an agent for some reason or another, but as a general matter, the issue won't arise too much. So we would submit that the court should just hold that, as the federal circuit has held in a number of other circuits, that the statute is limited to depositions that would be authorized by the board and that the district court serves that important but ancillary role. I just want to mention one last thing, just to be clear about the San Antonio winery case. That's a very different context. Someone was trying to serve process in federal court on a trademark lawsuit, but the United States actually supported the domestic plaintiff in that case. It's a very different issue, but I just wanted to clarify the record about that, unless there are any questions. Thank you, Mr. Tinney. Thank you, Your Honor. Dan, you have some time reserved. Thank you, Your Honor. The one thing I did not hear the government's counsel mention is the text of the statute. The government has made a good argument for why Congress should completely rewrite the statutory scheme and provide that only certain kinds of process can be issued by district courts if you get a permission slip from the agency. Yes, Judge Floyd, it is begging. It's an unusual situation for a party to a litigant in front of what's supposed to be a neutral tribunal, having a lawyer from the same office show up advocating for one side of a dispute who takes the position that the usual default rule should be that a non-United States person enjoys this great advantage and that it never has to... It's sort of a very inflammatory way of describing what's going on. We've talked about the concerns that were Judge Wilkinson raised in his dissent about comedy and sort of trying to make this system work best, and that's all been entrusted to the agency. You figure out the rules that will kind of address the values and the concerns raised in that dissent. The agency has done that. I mean, you can call it begging, I guess, but it's pretty standard administrative law that at that point, go to the agency. Well, it depends on what you're trying to get. If what ExactWare wanted was definitely a deposition of a specific natural person who lives or resides in Australia, then that's what we would have to do because Rule 30b-6 does not the respondent to designate any specific person. So yes, there is an independent role to play if what ExactWare wanted to do was to accomplish that. Also, as the board itself says, we could seek issuance of a letter of derogatory and seek assistance from an Australian court. Again, these are parallel means of getting discovery. The statute has never subordinated the power of the agency. So I think it's very, very important that this court should be jealously guarding the Article III jurisdiction of the court. The district court in this case never addressed Rule 45 or any other argument because it took the position that the subpoena was a nullity. It didn't need to be responded to at all. And the argument here made by the government is it's not supported by any of the cases. The court did address this, right? At first, it said not within the district, but then it went on and said, also, there's this other problem. Well, it didn't articulate how that fit under the statute. And the government has supplied that by saying that you should tease out of the phrase for use in an external limit on what process the district court can... I think the government's relying more, for better or for worse, on this sort of contextual reading, legislative history, things like that. I mean, you're right. They also talk about for use, but that's not the entirety of the argument. The way I read the argument, that's the only statutory hook they have because all of those older cases dealing with patent office interferences construe the second sentence of the statute and do not involve type of subpoena at all. And the other fundamental distinction between this case and those other cases is that taking deposition discovery upon oral examination in the United States is a form of discovery that is permitted by the agency. Taking oral depositions is the standard way depositions are taken in the United States. And the fight here is over whether a domestic agent's service of process is sufficient to require the result that happened in the Rosenruys case. The government's argument implies that Rosenruys was wrongly decided. Under the argument that they're making, Rosenruys should have come out the other way, and that the deposition subpoena in that case should have been quashed. Well, that view did not command a majority of the court. And I respectfully submit that under the Rosenruys decision and under the text of the law, the proper procedure here is if a subpoena is served commanding a person to take action, that person respond to the subpoena under and in accordance with the federal rules of civil procedure. It would be open to a litigant to argue that for foreign policy reasons, it should not have to show up for deposition or whatever reasons they want to argue under Rule 26C. But that's not what the court has before. The district judge in this case never engaged with the merits of the subpoena. It took the position that it was a nullity. So no question of burden. We did, Your Honor, propose a video conference deposition. This is not about trying to impose expense. And what's going on here is that this defendant does not ever want to have to submit to our cross-examination if it doesn't have to. So all we're trying to do is get to the merits. The statutory scheme clearly is even-handed. There would be no point to 1E of the statute if it meant that a service of a subpoena could nevertheless result in no submission to the judicial power the way that the domestic litigants should. It is unusual to suggest that in what's supposed to be an even-handed litigation that there should be this great discrimination. What we're talking about is a deposition in the United States. The rules that we're talking about are what can be done on the basis of notice alone if you want to take a deposition in a foreign country. And make no mistake, a deposition on written questions is still a deposition. You still have to have a legal officer in the foreign country. You have to find one. You may have to seek a letter of request in order to get it. And then the foreign witness sits in front of the deposition. But instead of being questioned by counsel who knows the case and is able to conduct effective cross-examination, the witness is given the questions in advance, propounded by an officer overseas, and he takes down the answers no matter how non-responsive or evasive. And that's the end of the inquiry. I would also point out that... Just as a matter of curiosity, why did you go to the TTAB and ask for permission to do the deposition? Because we thought under Rosen-Ruiz we had every right to just, without having to file a motion and go through that whole process, we could just serve a subpoena. So we relied on the Rosen-Ruiz majority decision, and this case is practically on all fours with Rosen-Ruiz. That case, as I discussed with your colleague, there's a lot of dicta that's very helpful to you, but it's very clear. It's not issuing a holding that helps you here. Well, but the issue that was... On the issue that divided the court at that time, the government fully agrees with us. In terms of whether or not the subpoena was properly served on Rosen-Ruiz through its agent, the government totally agrees with us. I would point out that on this question, agency decisions on registration disputes are subject to de novo review in district court under 15 U.S.C. Section 1071B. So it's unusual that the agency would be taking this position on this since it's not going to have the final word on it anyway. It's just postponing when a deposition is going to occur. So we're trying to get to the merits. We've served a subpoena that's just like in Rosen-Ruiz. This respondent can show up for deposition. It can make its arguments to the judge if it wanted to make a motion for protective order that says costs should be shifted, costs should be shared, video conference techniques should be used. There's all kinds of procedural safeguards that are available for a litigant who says that complying with process that Congress has seen fit to provide for is unduly burdensome in the context of the needs of the case and the importance of the issues and all of the Rule 26 stuff. But we never got to that because they've taken this broad categorical approach that the subpoena doesn't call for an answer at all under Rule 45 or any of those other merits arguments. So we believe the proper procedure here is to reverse and remand and then they will respond to the motion for protective order or they say that the geographic limits are exceeded or whatever their argument is. We can litigate that. None of those were raised and the district court, I will say, repeatedly rejected these types of arguments that were put in forum when he saw that they claimed to have a headquarters in Austin, Texas. There were factual disputes as to what's really driving the position of the respondents and that's on page 207 of the report. No further questions, I'll submit and thank the courts for its attention. Thank you so much, Mr. Daly and counsel. We will ask the clerk to adjourn until tomorrow morning and they will come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Pamela A. Harris, Henry F. Floyd